22 Kan. App.2d 673 (1996)
922 P.2d 1103
In the Matter of J.T.M. and M.N.M.
No. 74,548.
Court of Appeals of Kansas.
Opinion filed July 26, 1996.
Kevin C. Harris, of Fairway, for appellant J.T.M., and James C. Trickey, of Overland Park, for appellant M.N.M.
Mary S. Hosach and Jacqueline J. Spradling, assistant district attorneys, Paul J. Morrison, district attorney, and Carla J. Stovall, attorney general, for appellee.
*674 Before GREEN, P.J., RULON, J., and DAN D. BOYER, District Judge, assigned.
RULON, J.:
This is an appeal by two juveniles, J.T.M. and M.N.M., respondents, who argue the district court did not have jurisdiction to adjudicate them as juvenile offenders on charges of aggravated battery because the charging documents were defective. Respondents specifically claim the court erred in allowing the State to amend the complaints to cure the defect, denying their request for discovery, denying their request for a jury trial, and permitting a co-respondent to testify. We affirm.
The facts of this case are essentially undisputed and are as follows:
Respondents were each charged as juveniles with one count of aggravated battery, K.S.A. 21-3414, level 7 person felonies. The cases were consolidated for purposes of trial.
Prior to trial, respondents filed motions to have the charges dismissed because the charging documents were fatally defective. According to the motions, the complaints alleged respondents committed an aggravated battery with a deadly weapon, to wit, mace or fists. The trial court indicated the motion would be granted if requested but that the prosecution would simply refile the charges. Respondents' counsel then informed the court the father of respondents did not want the case dismissed and agreed to permit the State to amend the complaint.
Eventually, counsel for respondents filed discovery motions requesting all medical records from any health care provider who treated the victim for injuries alleged to have resulted from respondents' actions. The motions also requested the details of any agreements for leniency given by the prosecution to any witness in the case. Respondents additionally filed motions requesting a jury trial.
The trial court directed the district attorney to provide respondents with all of the State's files for discovery purposes and denied the request for a jury trial. Respondents were subsequently found to be juvenile offenders and placed on probation in the custody of their parents for approximately 1 year.

*675 DEFECTIVE COMPLAINT
Respondents' first argument is that the trial court erred in allowing the State to amend the complaint. Specifically, respondents argue that because the complaint was fatally defective, the court never had jurisdiction and consequently had no authority to allow the complaint to be amended.
Respondents primarily rely on State v. Wilson, 240 Kan. 606, 731 P.2d 306 (1987), as support for this issue. In Wilson, the court stated that "[a]n information which omits one or more of the essential elements of the crime it attempts to charge is jurisdictionally and fatally defective and a conviction of that offense must be reversed." 240 Kan. at 607. The court further said that an information that does not charge any offense cannot be amended during trial over the defense's objection. 240 Kan. at 608.
In Wilson, the defendant was charged with first-degree murder; however, the information did not charge that the killing was done maliciously, deliberately, and with premeditation. Instead, the information only charged that the defendant did "unlawfully, wilfully kill and murder" the victim by stabbing her in the chest with a knife and inflicting mortal wounds. As such, because the information omitted one or more of the essential elements of the crime charged, the court concluded that the information was jurisdictionally and fatally defective. 240 Kan. at 607. Similarly, the language in the information was insufficient to allege second-degree murder, voluntary manslaughter, or involuntary manslaughter. 240 Kan. at 607-08. Therefore, the case went to trial on an information that did not charge any degree of criminal homicide under the laws of this state. 240 Kan. at 608.
The State argued the information was amended during trial to charge first-degree murder. The Wilson court noted that at one point the prosecutor stated a desire to amend the information, but made no oral or written motion on the record. The State never filed an amended information; the prosecutor did not state on the record the wording in the information the State wished to add or delete; and the prosecutor did not seek to amend by interlineation. The Wilson court concluded the information had never been amended. 240 Kan. at 608.
*676 The difference between this case and Wilson is that here there was no conviction resulting from a defective information. Here, the record shows that upon respondents' motion to dismiss, the prosecution filed an amended complaint and charged respondents with a level 8 aggravated battery versus the level 7 aggravated battery each was originally charged with committing. The amended complaints were filed prior to trial and after respondents had withdrawn their request for a dismissal.
K.S.A. 38-1622 sets out the requirements for a complaint alleging an individual is a juvenile offender. The statute requires that the complaint contain, plainly and concisely, the essential facts constituting the offense charged and, if the statement is drawn in the language of the statute, ordinance, or resolution alleged to have been violated, such shall be considered sufficient. For each count charged, the information is to contain the official or customary citation of the statute, ordinance, or resolution which is alleged to have been violated, but error in the citation or its omission shall not be grounds for dismissal of the complaint or for reversal of an adjudication if such error did not prejudice the respondent. K.S.A. 38-1622(a)(1)(D) and (E).
Neither party cites, and our own research fails to find, any Kansas authority dealing with an allegation that a juvenile complaint is fatally defective. There is, however, an abundance of case law concerning defective criminal complaints or informations under K.S.A. 22-3201.
K.S.A. 22-3201 provides that the information, complaint, or indictment shall be a plain and concise written statement of the essential facts constituting the crime charged, which is to be drawn in the language of the statute. The complaint, information, or indictment shall state, for each count, the customary citation of the statute, rule, and regulation, or other provision of the law the defendant is alleged to have violated. "Error in the citation or its omission shall [not be] ground for dismissal of the complaint, information or indictment or for reversal of a conviction if the error or omission did not prejudice the defendant." K.S.A. 22-3201(b).
While juvenile proceedings are considered civil in nature and totally separate from any criminal implications, State v. Muhamad *677 237 Kan. 850, Syl. ¶ 2, 703 P.2d 835 (1985), the similarity in language and purpose of K.S.A. 38-1622 and K.S.A. 22-3201 would indicate such statutes should be considered in pari materia. See State v. Starks, 20 Kan. App.2d 179, 182, 885 P.2d 387 (1994).
In State v. Woods, 250 Kan. 109, 825 P.2d 514, cert. denied 506 U.S. 850 (1992), the defendant argued the trial court erred in allowing the prosecution to amend the complaint and add new charges prior to trial. The defendant claimed K.S.A. 22-3201(4) clearly allowed the prosecution to amend a complaint anytime before verdict only if no additional or different crimes are charged and if the substantial rights of the defendant are not prejudiced. 250 Kan. at 111. Our Supreme Court said: "Prior to trial, the trial court has discretion to allow an amendment to a complaint, including the charging of a different crime, provided the substantial rights of the defendant are not prejudiced." 250 Kan. 109, Syl. ¶ 1.
"Although the statutory language has changed since the inception over a century ago of statutory authorization to amend a complaint, this court consistently has given the State considerable latitude in amending a complaint before trial. A liberal interpretation does not contradict the express language of the statute: K.S.A. 22-3201(4) does not forbid a court from differentiating between allowing the State to amend complaints before trial and during trial.
....
"We see no reason to depart from the principle that the State has discretion to amend a complaint before trial and that error will be found only if the defendant's substantial rights are prejudiced." 250 Kan. at 114-15.
We believe the trial court here was vested with discretion to allow the prosecution to amend the information or complaint as long as the substantial rights of respondents were not prejudiced.
The law in Kansas is well settled that
"[j]udicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. Judicial discretion must thus be considered as exercisable only within the bounds of reason and justice in the broader sense and be considered abused only when it plainly over-passes those bounds." State v. Lumbrera, 257 Kan. 144, 148, 891 P.2d 1096 (1995).
*678 Respondents make no argument as to how the district court abused its discretion, or how their substantial rights were prejudiced. Their sole argument is that the court lacked jurisdiction. Such argument is clearly without merit, following Woods.

MEDICAL RECORDS
Respondents next argue the trial court erred by not allowing them to discover all of the victim's medical records so respondents' counsel could adequately cross-examine the victim on the issue of restitution.
The State argues such information was privileged and the State never had any of the requested information in its files and was not required to order the victim to provide such information to respondents. The record shows that upon respondents' request for discovery, the court ordered the prosecution to turn over any information in its files. There is nothing in the record to show that respondents objected to the testimony of the victim because they did not have all the medical documents. Respondents did object to the testimony of the victim on the basis they had not been provided information concerning any favorable treatment the victim was receiving from the prosecution.
K.S.A. 38-1653 provides that in all adjudicatory hearings, the rules of evidence of the Code of Civil Procedure shall apply. Respondents do not cite any part of the code or case law which indicates the prosecution must obtain the medical records of a victim to allow a respondent to cross-examine the victim in a juvenile case.
An analogous case arising under the criminal code is State v. Dressel, 241 Kan. 426, 738 P.2d 830, cert. denied 484 U.S. 968 (1987). In Dressel, the defendant sought to discover certain evidence which was in the possession of the victim, the Cargill Corporation. The bulk of the investigation into the charges against the defendants was performed by Cargill and not by the State. Most of the evidence was in Cargill's possession and not in the possession of the State. Also, Cargill, under K.S.A. 19-717, hired a special counsel to assist in the prosecution of the case. When the defendants tried to compel discovery of certain items held by Cargill, the trial court consistently denied the motions because the court *679 did not have jurisdiction to order Cargill, as a nonparty, to participate in the discovery. The trial court ruled that while it could not order a nonparty to produce documents under K.S.A. 22-3212, the defendants could subpoena the records and the court would enforce the subpoena.
Our Supreme Court, in reversing this court, held that an attorney hired by the prosecuting witness must participate in discovery under K.S.A. 22-3212 by disclosing evidence requested by the defense which is in the custody or control of the attorney. Additionally, the attorney must disclose evidence which would tend to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. However, the prosecuting witness is not a party to the action, and the witness' records are not in the possession of the State; therefore, a trial court has no jurisdiction to compel discovery from such a witness under K.S.A. 22-3212. 241 Kan. at 436-37.
Applying the Dressel rationale here, M.S., the victim/prosecuting witness, was not a party to the action, and consequently the trial court has no jurisdiction to compel discovery other than as provided in the Code of Civil Procedure. If respondents wished to discover documents in the custody of M.S., they should have issued a subpoena duces tecum under K.S.A. 60-245(b). As there is no allegation that such documents were ever in the custody or control of the prosecution, the trial court had no jurisdiction to issue an order compelling the State to obtain documents from M.S. Additionally, there is no indication the respondents tried to subpoena the documents. As such, this issue is without merit.

CO-RESPONDENT'S TESTIMONY
Respondents next argue the trial court should not have allowed J.L., a co-respondent, to testify because the State had failed to reveal any favorable treatment afforded J.L. in exchange for his testimony. Respondents characterize this as a Brady issue.
Under Brady v. Maryland, 373 U.S. 83, 10 L. Ed.2d 215, 83 S. Ct. 1194 (1963), the prosecution must disclose exculpatory evidence that is material to the guilt or to the punishment of a defendant. Discovery should be the norm, and an arbitrary refusal to *680 require the prosecution to disclose material information, without reason, is an abuse of discretion. State v. Humphrey, 217 Kan. 352, 360, 537 P.2d 155 (1975). Evidence impeaching the credibility of a government witness falls within the Brady rule when the reliability of the witness may be determinative of the guilt or innocence of the defendant. Giglio v. United States, 405 U.S. 150, 154, 31 L. Ed.2d 104, 92 S. Ct. 763 (1972). Clearly, the prosecution is required to turn over evidence to the defense that a witness has received favorable treatment in exchange for his or her testimony. Such evidence may be useful to the defense to impeach the State's witness by showing bias or interest. United States v. Bagley, 473 U.S. 667, 87 L. Ed.2d 481, 105 S. Ct. 3375 (1985). However, failure to disclose such information warrants a reversal only if it is material. The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." 473 U.S. at 678.
Here, respondents filed a motion asking for information regarding any and all agreements entered into by the prosecution with any witness, including promises to forbear prosecution, parole, probation, diversion, or immunity. At trial, respondents sought to exclude the testimony of J.L. because the prosecution had failed to turn over any information of any deals or leniency promised or given to J.L. in exchange for his testimony. The prosecution responded by proffering that the witness had not received any favorable treatment. J.L. testified that he had never spoken to the prosecution about any favorable treatment in exchange for his testimony. The trial court found that J.L. did not receive favorable treatment in exchange for his testimony.
Our concern with respondents' argument is that during the bench trial, the prosecutor stated that J.L. had entered a plea of guilty to attempted aggravated battery for his participation in the same beating that led to the prosecution of respondents for aggravated battery. The court was obviously well aware of the fact that even though J.L. was an admitted participant in the beating, as he admitted to repeatedly kicking the victim after the victim was on *681 the ground, he was only charged with attempted aggravated battery. The court, in denying the motion to exclude, stated the sentence would have been 1 year probation for either attempted or aggravated battery. Therefore, we conclude the facts do not meet the materiality test stated in Bagley. There was not a reasonable probability that had the information been disclosed prior to trial, the result of the proceeding would have been any different. In fact, the charges pending against J.L. were readily available to respondents, as such were a matter of public record. See K.S.A. 38-1607. Consequently, the court did not err in denying respondents' motion to exclude J.L.'s testimony.

REQUEST FOR A JURY TRIAL
Respondents' final argument is that the trial court erred in denying their request for a jury trial. Respondents argue that because there is no right to a jury trial in a juvenile proceeding, the trial court does not have to consider any lesser included offenses. Therefore, their argument implies the court should have granted their request for a jury trial so the trier of fact could consider any lesser included offenses. Respondents cite State v. Johnson, 258 Kan. 61, 899 P.2d 1050 (1995), to support their proposition. Additionally, respondents argue the potential ramification of a juvenile adjudication under the Kansas Sentencing Guidelines Act dictates that juveniles have a right to a jury trial.
The first problem with respondents' argument is that Johnson does not stand for the point of law as stated by respondents. Johnson says that when the trial is to the court, the court is presumed to know the law. If the evidence would support the giving of a lesser included instruction had the case been tried to a jury, the trial court is presumed to have followed the same course as if such an instruction had been given. 258 Kan. at 65. However, where the trial court, in a bench trial, finds that the defendant is guilty of the greater crime beyond a reasonable doubt, it is not necessary that the court consider any lesser included offense. 258 Kan. 61, Syl. ¶ 2.
Second, our Supreme Court in Findlay v. State, 235 Kan. 462, Syl. ¶ 2, 681 P.2d 20 (1984), held the trial court's decision to deny *682 or grant a jury trial in a juvenile proceeding is not subject to appellate review. Absent some indication by the Supreme Court that it is departing from its previous position, this court is duty bound to follow the law as handed down from the Supreme Court. State v. Allen, 21 Kan. App.2d 811, 816, 908 P.2d 1324 (1995), rev. denied 259 Kan. 928 (1996).
Affirmed.